IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM HENRY KENNEDY,<br><br>               Plaintiff,<br><br>      v.<br><br>AMERICAN AIRLINES INC., ENVOY<br>AIRLINES INC., and JOHN DOE 1-<br>10,<br><br>               Defendants. | HONORABLE JEROME B. SIMANDLE<br><br><br>Civil Action No.<br>15-8058 (JBS/KMW)<br><br><br>**OPINION** |

APPEARANCES:

William Henry Kennedy, <u>pro se</u>
2834 Atlantic Ave, Apt. 815
Atlantic City, NJ 08401

David Black, Esq.
Schoeman Updike & Kaufman LLP
551 Fifth Avenue, 12th Floor
New York, NY 10176
      -and-
Daniel E. Farrington, Esq.
The Farrington Law Firm, LLC
7501 Wisconsin Avenue, Suite 1220W
Bethesda, MD 20814
      Attorney for Defendants

**SIMANDLE, Chief Judge:**

I.   **INTRODUCTION**

In this employment action, <u>pro se</u> Plaintiff, William Henry

Kennedy (hereinafter, "Plaintiff"), generally alleges that

Defendants Envoy Airlines, Inc.[1] (hereinafter, "Envoy"), American

---

[1] Although Plaintiff names American Airlines in his pleading, he
was employed by Envoy, and directs no substantive allegations at

Airlines, Inc. (hereinafter, "American Airlines" and collectively, "Defendants"), and John Doe 1-10 unlawfully terminated his employment after he failed an "unreliable" on-the-job breathalyzer test, and seeks damages for the pain and suffering he purportedly endured through Defendants' rehabilitation process and unemployment proceedings. (See generally Am. Compl.)

Plaintiff's 14-count Second Amended Complaint alleges, in particular, that Defendants: (1) terminated his employment in breach of the Collective Bargaining Agreement (hereinafter, "CBA") between Envoy and Plaintiff's Union (hereinafter, "Counts I-III & XIII); (2) defamed him through the alleged release of his "confidential" medical information (hereinafter, "Count IV"); (3) committed fraud and interfered with his contractual and business relationships by "overriding" his COBRA health insurance coverage (hereinafter, "Counts V, VI, VIII, IX, & XIII"); (4) subjected him to emotional distress (hereinafter, "Counts VII, X, & XII"); (5) discriminated against him on account of his race and association with a disabled person (hereinafter, "Count XI"); and (6) infringed upon his

---

American Airlines, nor identifies any wrongdoing on the part of that entity.  As a result, Plaintiff's claims against American Airlines will be dismissed with prejudice.

constitutional rights in violation of 42 U.S.C. § 1983 (hereinafter, "Count XIV").[2]  (See id. at ¶¶ 45-112.)

Defendants now move to dismiss Plaintiff's Complaint, in its entirety, on the grounds that the Railway Labor Act, 45 U.S.C. § 181, preempts Plaintiff's CBA-related claims, and because his allegations otherwise fail to meet the specificity and particularity requirements for federal pleadings.  (See generally Defs.' Br. at 4-22.)  Plaintiff, for his part, provides little, if any, response to Defendants' substantive challenges to the viability of his claims (see generally Pl.'s Opp'n), and instead reiterates his lengthy recitation of the underlying events.[3]  (See generally Pl.'s Opp'n.)

---

[2] More specifically, Plaintiff alleges that Defendants violated 42 U.S.C. § 1983, by depriving him of his constitutional right to "the pursuit of happiness" in employment.  (Am. Compl. at ¶¶ 107-112.)  Nevertheless, claims under 42 U.S.C. § 1983 can be lodged only against persons acting under color of state law, see, e.g., Schneyder v. Smith, 653 F.3d 313, 319 (3d Cir. 2011), and the compliance of Defendants' agent with state licensing requirements does not transform a private counselor role into that of a state actor.  See, e.g., Benn v. Universal Health Sys., Inc., 371 F.3d 165, 170-73 (3d Cir. 2004) (rejecting the notion that a mental healthcare facility, a psychiatrist, and/or a crisis counselor qualify as state actors); Shabazz v. Family Court of Del., 2011 WL 3555852, at *3 (D. Del. Aug 11, 2011) (citing Reichley v. Penn. Dep't of Agric., 427 F.3d 236, 244-45 (3d Cir. 2005)) (finding private attorneys, private psychologists, and a volunteer child advocate not "'clothed with the authority of state law'").  As a result, Count XIV will be dismissed with prejudice.
[3] In addition, Plaintiff challenges Defendants' dismissal motion as untimely, and alleges that Defendants "consented" to his claims by removing this action to federal Court.  (Pl.'s Opp'n at 4-8.)  These assertions, however, merit little discussion,

For the reasons that follow, Defendants' motion to dismiss will be granted.

## II.   BACKGROUND

### A.   Factual and Procedural Background[4]

Beginning in 2001, Plaintiff worked as a flight attendant for Envoy Airlines.  (See Am. Compl. at ¶¶ 10-11.)  At 5:15 A.M. on March 3, 2014, Plaintiff reported to work un-showered, unshaven, wearing dirty clothes, and smelling faintly of alcohol. (See id. at ¶¶ 20-21.)  As a result, at approximately 8:30 A.M., Envoy performed a "reasonable suspicion" breathalyzer test, which reported a blood alcohol concentration, or BAC, of .135.  (See id. at ¶¶ 22, 25.)  At 9:34 A.M., Envoy then performed a confirmation test, which revealed a BAC of .083. (See id. at ¶ 25.)  Based upon these over-the-legal-limit readings, Envoy immediately suspended Plaintiff, and officially

---

because removal does not preclude a dismissal motion (nor does it operate as an admission on the viability of claims), and because Defendants timely moved to dismiss under Federal Rule of Civil Procedure 12(a)(4).

[4] For purposes of the pending motion, the Court accepts as true the version of events set forth in Plaintiff's Complaint, and construes Plaintiff's pleading, as it must, liberally.  See Higgs v. Att'y Gen., 655 F.3d 333, 339 (3d Cir. 2011) (describing the liberal construction required of pro se submissions); Capogrosso v. Sup. Ct. of N.J., 588 F.3d 180, 184 (3d Cir. 2009) (per curiam) (same).

(and retroactively) terminated his employment on March 20, 2014.[5] (See id. at ¶ 25; see also Ex. F to Am. Compl.)

Despite this termination, Envoy's CBA with Plaintiff's union made a flight attendant "'charged with a first drug or alcohol testing violation ... eligible for conditional reinstatement upon successfully completing of [the Employee Assistance Program's, or EAP's,] designated rehabilitation program.'" (Am. Compl. at ¶ 51 (citation omitted).) Plaintiff, in turn, met with Envoy's Substance Abuse Professional/Employee Assistance Program (hereinafter, "SAP" or "EAP") Manager, Ellyn Kravette, who recommended a 28-day in-patient rehabilitation program, and provided him with a referral to two designated facilities. (See id. at ¶¶ 53-55, 57; see also Ex. V. to Am. Compl.) On April 21, 2014, Plaintiff admitted himself to the Marworth Rehabilitation Center in Pennsylvania. (See Am. Compl. at ¶ 61.) Two days later, however, Marworth administratively terminated Plaintiff's admission, because of his disagreement "with a diagnosis of alcohol abuse or alcohol dependence," and because his disruptive "behavior became increasingly toxic to

---

[5] In the meantime, Plaintiff obtained COBRA health insurance, in order to cover "the over $20,000" cost of the in-patient alcohol treatment described below (Am. Compl. at ¶ 56), and applied for New York unemployment benefits. (See Ex. G to Am. Compl.) The New York Department of Labor, however, denied his application at the initial stage of review (mostly, because his termination resulted from alleged misconduct), and Plaintiff pursued the administrative appeal detailed below. (See Am. Compl. at ¶ 31; see also Ex. G to Am. Compl.)

the therapeutic environment." (Ex. U to Am. Compl.)  As a result, the Marworth Counselor and Associate Medical Director found themselves "unable to treat" Plaintiff, despite concluding that he suffered from "difficulties with alcohol." (Id. at 3.) Envoy, in turn, found Plaintiff ineligible for reinstatement, because he failed to successfully complete EAP's 28-day treatment plan. (See Am. Compl. at ¶ 74.)

In the aftermath of his discharge, Plaintiff appealed the denial of his unemployment benefits by challenging the calibration of the breathalyzer instrument. (See Am. Compl. at ¶ 35.)  Following a lengthy administrative hearing, the Administrative Law Judge, Alison Ferrara (hereinafter, the "ALJ"), overturned the unemployment denial, based upon concerns over "the accuracy" of the breathalyzer machine,[6] and because the breathalyzer technician's testimony proved, by itself, "insufficient to establish" Plaintiff's intoxication. (Ex. M to Am. Compl. at 5-6.)  As a result, the ALJ found Plaintiff entitled to unemployment benefits.[7]  (Id. at 7.)

---

[6] More specifically, the ALJ pointed to various anomalies with the breathalyzer instrument, including "two 'excessive sensor noise' readings" and the machine's registration of "'a higher than .000 reading during an 'air blank test.'" (Ex. M to Am. Compl. at 5.)

[7] On February 24, 2015, the New York State Appeal Board affirmed this decision. (See Ex. G to Am. Compl.)

Following the unemployment proceedings, Plaintiff filed this litigation,[8] and the pending dismissal motion followed.

## III.  STANDARD OF REVIEW

### A.  Standard of Review Applicable to Defendants' Rule 12(b)(1) Preemption Challenges

Because federal courts are courts of limited jurisdiction, the party seeking to invoke the court's jurisdiction bears the burden of proving the existence of subject matter jurisdiction. See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994).  Federal Rule of Civil Procedure 12(b)(1) therefore enables a party, as here, to move to dismiss a complaint for lack of subject matter jurisdiction.

Under Rule 12(b)(1), the court's jurisdiction may be challenged either facially (based on the legal sufficiency of the claim) or factually (based on the sufficiency of a jurisdictional fact).  Gould Elecs. v. U.S., 220 F.3d 169, 178 (3d Cir. 2000); see also A.D. v. Haddon Heights Bd. of Educ., 90 F. Supp. 3d 326, 334 (D.N.J. 2015) (explaining the same distinction).  In considering a factual attack, as here, the Court need not cabin its inquiry to allegations in the complaint.  Rather, the Court may "consider affidavits, depositions, and testimony to resolve factual issues bearing on jurisdiction."  Gotha v. U.S., 115 F.3d 176, 179 (3d Cir. 1997);

---

[8] Defendants removed this action from state court on November 13, 2015.

see also Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891–92 (3d Cir. 1977).

**B.    Standard of Review Applicable to Defendants' Rule 12(b)(6) Plausibility Challenges**

Under Federal Rule of Civil Procedure 12(b)(6), the court must "'accept all factual allegations as true, construe the Complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the Complaint, the plaintiff may be entitled to relief.'" Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012) (citations omitted).

In applying this standard to pro se pleadings and other submissions, as here, the Court must liberally construe the well-pleaded allegations, and draw all reasonable inferences in favor of the pro se litigant. Higgs, 655 F.3d at 339 (3d Cir. 2011); Capogrosso, 588 F.3d at 184. Despite this liberality, however, a pro se complaint must still "contain sufficient factual matter, accepted as true," to "'state a [plausible] claim to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Marley v. Donahue, 133 F. Supp. 3d 706, 714 (D.N.J. 2015) (explaining the same concept).

**IV.   DISCUSSION**

As stated above, Plaintiff's Complaint contains a bevy of claims resulting from his termination from Envoy.  For the reasons that follow, Counts I, II, III, XIII, and XIV will be dismissed with prejudice, and Counts IV, V, VI, VII, VIII, IX, X, XI, and XII will be dismissed without prejudice and with leave to amend.

> **A.   Counts I, II, III, and XIII: The Railway Labor Act Preempts Plaintiff's CBA-Related Claims**

In Counts I, II, III, and XIII, Plaintiff generally alleges that his termination violated the CBA between Envoy and his union.  (See generally Am. Compl. at ¶¶ 45-76, 106.)  More specifically, Plaintiff claims that Envoy violated the CBA by terminating him without cause (Count I), failing to reinstate him (Count II), and by not offering him an alternative to in-patient alcohol treatment (Counts III & XIII).[9]  Defendants argue, in turn, that the RLA preempts the CBA-oriented aspects of Plaintiff's Complaint, and takes the view that these claims

---

[9] Plaintiff identifies Count XIII as a claim for **"Tortious Intentional Interference of Contract."**  (Am. Compl. at ¶ 106 (emphasis in original).)  Nevertheless, Plaintiff cannot lodge a tortious interference claim against "a party to [a] contract," Emerson Radio Corp. v. Orion Sales, Inc., 253 F.3d 159, 173 (3d Cir. 2009), and Plaintiff's one-paragraph claim speaks only in terms of a contractual violation of the CBA.  (See Am. Compl. at ¶ 106 (alleging that Defendants "intentionally" breached their "contractual obligations" under the CBA in an effort to deprive Plaintiff of his "inalienable constitutional rights, forever").)  As a result, it fails for the same reasons as the other CBA-related aspects of Plaintiff's Complaint.

must be dismissed for lack of subject matter jurisdiction.  (See
Defs.' Br. at 5-7, 11, 14.)

     In passing the RLA, Congress sought to "minimize
interruptions in national transportation," by establishing an
"effective [and mandatory] mechanism for resolving disputes
between employers, unions and employees."[10]  Mersmann v. Cont'l
Airlines, 335 F. Supp. 2d 544, 550 (D.N.J. 2004); see also See
Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252 (1994).
More specifically, the RLA created an arbitration scheme "to
provide for the prompt and orderly settlement of all disputes
growing out of grievances or out of the interpretation or
application" of labor agreements.  45 U.S.C. § 151a; see also
Union Pac. R.R. v. Sheehan, 439 U.S. 89, 94 (1978) (explaining
the same purpose).

     The RLA defines labor disputes as "major" or "minor," with
major disputes relating to the "formation of collective
bargaining agreements or efforts to secure them," Consol. Rail
Corp. v. Ry. Labor Executives Ass'n, 491 U.S. 299, 302 (1989),
and "minor" disputes "involving the interpretation or
application of existing labor agreements."  Hawaiian Airlines,

_____

[10] The RLA "cover[s] every common carrier by air," and "every air
pilot or other person who performs any work as an employee or
subordinate official" of such an air carrier.  45 U.S.C. § 181.
Because this action concerns a qualifying air carrier, and its
former flight attendant, the RLA plainly governs the parties'
relationship.

Inc., 512 U.S. at 256.  In other words, "major disputes seek to create contractual rights; minor disputes to enforce them."  Id. at 253.

As relevant here, parties involved in a minor dispute must arbitrate their dispute before an adjustment board established by the employer and the unions representing the employees. Consol. Rail Corp., 491 U.S. at 303.  Indeed, the adjustment board has exclusive jurisdiction over disputes arising from the interpretation and/or application of CBA provisions (i.e., "minor" disputes), and the RLA essentially precludes judicial review of substantive board determinations.  Id. at 304 (explaining that the RLA subjects minor disputes "to compulsory and binding arbitration"); see also Union Pac. R.R. v. Sheehan, 439 U.S. 89, 94 (1978) (explaining that Congress deemed it essential to the maintenance of labor peace to keep certain disputes "within the Adjustment Board and out of the courts"); Nachtsheim v. Cont'l Airlines, 111 F. App'x 113, 116 (3d Cir. 2004) (same).  In other words, the RLA subjects minor disputes "to a compulsory and binding arbitration before an adjustment board," Int'l Ass'n of Machinists & Aerospace Workers v. U.S. Airways, Inc., 358 F.3d 255, 260 (3d Cir. 2004), and federal district courts lack subject matter jurisdiction over these sorts of challenges.  See Nachtsheim, 111 F. App'x at 117 (vacating grant of summary judgment for Plaintiff's contract

11

claim and remanding with instructions to dismiss for lack of
subject matter jurisdiction); Sierra v. Cont'l Airlines, Inc.,
No. 12-4368, 2013 WL 1222797, at *3 (D.N.J. Mar 25, 2013)
("District Courts do not have subject matter jurisdiction over
... minor disputes.") (citing Consol. Rail Corp. v. Ry. Labor
Execs.' Ass'n, 491 U.S. 299, 303-04 (1989)).

In this case, Counts I, II, III, and XIII present
paradigmatic examples of minor disputes, because Plaintiff
alleges little more than that Defendants' conduct breached the
CBA.  (See, e.g., Am. Compl. at ¶ 49 ("[P]laintiff['s]
termination was without cause and as a member of a union with a
Collective Bargaining Agreement (CBA) with the defendants,
termination without cause is forbidden...."); ¶ 51 (claiming
that "[D]efendants [are] in breach of [their] own contract with
the union...."); ¶ at 75 (citing the allegedly-breached
provision of the CBA); ¶ 76 (alleging that Defendants breached
the CBA by providing "no real, doable treatment plan"); ¶ 106
(alleging that breached their "contractual obligations" under
the CBA.) In that way, resolution of these claims would require
an inquiry into, and interpretation of, the CBA.  That sort of
inquiry, however, rests within the exclusive province of the
Adjustment Board, and not federal court.  Stated differently,
because these claims rest "squarely on an alleged breach of the
collective bargaining agreement," they are preempted by the RLA,

12

Atchison, Topeka & Santa Fe Ry. Co. v. Buell, 480 U.S. 557, 566 (1987); see also Tice v. Am. Airlines, Inc., 288 F.3d 313, 318 (7th Cir. 2002) ("[O]nly the arbitral boards convened under the aegis of the Railway Labor Act have the authority to determine the rights conferred by a collective bargaining agreement in the airline industry"), and must be dismissed with prejudice for lack of subject matter jurisdiction.[11]  See Sierra, 2013 WL 1222797, at *4 (dismissing similar claims with prejudice as preempted by the RLA).

**B.   Count IV: Plaintiff's Defamation Claim Must Be Dismissed**

In Count IV, Plaintiff appears to allege that Defendants defamed him by disclosing his confidential "EAP/SAP Initial Evaluation and EAP/SAP NON-Compliance report(s)" during the "unemployment compensation hearing" and "at will to third parties." (Am. Compl. at ¶¶ 77-82.)  Defendants submit, in turn, that the defamation claim fails for lack of specificity, and

_____

[11] In his opposition briefing, Plaintiff claims that he "must be allowed to proceed in court," because he "never had the chance to arbitrate [his] claim under the CBA." (See Pl. Opp'n. at 9 (emphasis in original).)  Nevertheless, the RLA preempts minor disputes, as here, regardless of whether the plaintiff elected to (or could) pursue arbitration. See, e.g., Nachtsheim v. Cont'l Airlines, 111 F. App'x 113, 115 (3d Cir. 2004) (affirming summary judgment on RLA preemption grounds despite the fact that plaintiff did not pursue arbitration); Sierra v. Cont'l Airlines, Inc., No. 12-4368, 2013 WL 1222797, at *2-3 (D.N.J. Mar. 25, 2013) (dismissing claims on RLA preemption grounds even though the plaintiff never arbitrated her claims before an adjustment board).

because the disclosure of information, if any, "was protected by a litigation privilege." (Defs.' Br. at 7.)

Under New Jersey law, a claim for defamation consists of three elements: "'(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher.'" Leang v. Jersey City Bd. of Educ., 969 A.2d 1097, 1113 (N.J. 2009) (quoting DeAngelis v. Hill, 847 A.2d 1261, 1267-68 (N.J. 2004)); see also Moriarty v. Classic Auto Grp., Inc., No. 13-5222, 2014 WL 2601887, at *5 (D.N.J. June 11, 2014) (reciting and applying the same elements). In order to survive dismissal, Plaintiff must therefore allege, with sufficient particularity, that Defendants (1) made a false, defamatory statement concerning him, and (2) communicated that statement to a third party.

Plaintiff's defamation claim in this instance, however, falls far short of these requirements. Critically, Plaintiff rests his defamation claim entirely upon Defendants' alleged disclosure of his "EAP/SAP Initial Evaluation and EAP/SAP NON-Compliance report(s)." (Am. Compl. at ¶ 77.) Aside from that nebulous assertion, however, Plaintiff points to no specific defamatory statement. Nor does he challenge, in any event, the factual accuracy (or, truthfulness) of the information contained

14

on these documents.[12]  In other words, his allegations plainly

fail to meet the first element of a defamation claim.  See

Rodridguez v. Ready Pac Produce, No. 13-4634, 2014 WL 1875261,

at *6 (D.N.J. May 9, 2014) (citing F.D.I.C. v. Bathgate, 27 F.3d

850, 875 (3d Cir. 1994) (dismissing a pro se defamation claim

for failure to "plead the alleged defamatory statements with

particularity").

　　Nevertheless, even if Plaintiff's allegations met the first

element (which they do not), his claim would still fail under

the publication requirement.  On this issue, Plaintiff turns his

attention to Defendants' alleged "at will" disclosure of his

confidential information "to third parties."[13]  (Am. Compl. at ¶

78.)  Extant authority, however, explains that vague references

to "'third parties'" prove insufficient to state a plausible

defamation claim, Cruz v. HSBC, No. 10-135, 2010 WL 2989987, at

---

[12] To the contrary, the allegations of his pleading directly rely
on many aspects of these documents.  The substantively 1-page
reports, for example, do little more than confirm Ms. Kravette's
recommendation that Plaintiff undergo a 28-day in-patient
treatment program.  (See Ex. V to Am. Compl.)  Plaintiff's
Amended Complaint, in turn, provides details far in excess of
those disclosed on the evaluation reports.  (See, e.g., Am.
Compl. at ¶¶ 53-55.)
[13] In their dismissal briefing, Defendants give much attention to
the privileged nature of any disclosure that occurred in
connection with the "unemployment insurance administrative
process."  (Defs.' Br. at 8.)  Because Plaintiff's Complaint,
however, acknowledges this litigation privilege, the Court need
not address it here.  (See, e.g., Am. Compl. at ¶ 78
(acknowledging that "defendants may release information ... in
certain legal proceedings," but alleging that Defendants cannot
disclose his information "at will to third parties").)

*3 (D.N.J. July 26, 2010); <u>see also</u> <u>Foy v. Wakefern Food Corp.</u>,
No. 09-1683, 2010 WL 147925, at 6 (D.N.J. Jan. 7, 2010) (stating
the same premise); <u>Zoneraich v. Overlook Hosp.</u>, 514 A.2d 53, 62
(N.J. Super. Ct. App. Div. 1986) (explaining that a plaintiff
must identify the "when, where, by which defendants and by what
words" the defamation occurred), and Plaintiff's allegations
here provide no additional detail.  As a result, Plaintiff
likewise fails to meet the second element of a defamation claim.

    For all of these reasons, Plaintiff's defamation claim will
be dismissed without prejudice.

###    C.   Counts V & VIII: Plaintiff's Fraud Claims Must Be
         Dismissed

    In Counts V and VIII, Plaintiff generally alleges that
Defendants engaged in fraud, by failing to return insurance
premiums he paid prior his termination, by interfering with his
post-termination COBRA insurance, and by making unidentified
misrepresentations to Marworth (among other third parties).
(<u>See</u> <u>generally</u> Am. Compl. at ¶¶ 83-98.)  Defendants, however,
take the view that these claims must be dismissed for failure to
"allege any of the essential elements of a claim for fraud."
(Defs.' Br. at 9.)

    Under New Jersey law, a claim for fraud requires the
plaintiff to allege "(1) a material misrepresentation of fact;
(2) knowledge or belief by the defendant of its falsity; (3)

[an] intention that the other person rely on it; (4) reasonable reliance [on the material misrepresentation] by the other person; and (5) resulting damage." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (citing Gennari v. Weichert Co. Realtors, 691 A.2d 350 (N.J. 1997)). In making these assertions, the plaintiff must then meet the "stringent" particularity requirements of Federal Rule of Civil Procedure 9(b). Id.; see also Fed. R. Civ. P. 9(b) ("all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity"). In other words, "the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Frederico, 507 F.3d at 200.

Plaintiff's fraud claims in this instance rest upon no such specificity. Indeed, Plaintiff's claims nowhere allege any particularized factual misrepresentation, much less reliance upon any misrepresentation. Rather, in an effort to buttress his fraud claims, Plaintiff looks only to nebulous and conclusory allegations. (See, e.g., Am. Compl. at ¶ 96 ("defendants committed fraud by making [a] misrepresentation to a third party which caused the third party to act in a way that [the third party] otherwise ... would not").) In that way, Plaintiff's allegations plainly lack the factual particularity

17

required for viable fraud claims.  See, e.g., Grant v. Revera Inc./Revera Health Sys., No. 12-5857, 2014 WL 7341198, at *11 (D.N.J. Dec. 23, 2014) (dismissing a factually undeveloped fraud claim); Angers v. Pennymac Loan Servs., LLC, No. 14-4701, 2014 WL 6668001, at *3 (D.N.J. Nov. 24, 2014) (citation omitted) (explaining that "'naked assertions devoid of further factual enhancement'" fail to establish a fraud claim).

For all of these reasons, Plaintiff's fraud claims will be dismissed without prejudice.[14]

### D.   Counts VI & IX: Plaintiff's Claims for Tortious Interference with Contractual or Business Relationships Must Be Dismissed

Counts VI and IX rest upon the same general premise as Plaintiff's fraud claims—namely, that Defendants interfered with his post-termination COBRA insurance, and adversely affected his future employment opportunities by failing to mention and/or misrepresenting to unknown third parties the "true reason" for his failure to complete treatment.  (Am. Compl. at ¶¶ 83-93, 94-98.)  Defendants, in turn, take aim at Plaintiff's tortious

---

[14] In Count V, Plaintiff makes brief mention of a qui tam claim under the False Claims Act, 31 U.S.C. § 3729(a) (hereinafter, the "FCA").  (See Am. Compl. at ¶ 89.)  Nevertheless, the FCA has no relevance to this action, because Plaintiff's Complaint contains no allegation that Defendants "presented or caused to be presented to an agent of the United States a claim for payment..."  U.S. ex rel. Schmidt v. Zimmer, Inc., 386 F.3d 235, 242 (3d Cir. 2004).  As a result, Count V is dismissed to the extent it seeks to assert an FCA claim.

interference claims for his failure to allege any actual interference.  (See Defs.' Br. at 11-14.)

In order to state tortious interference claims under New Jersey law, Plaintiff must allege four elements: (1) a protected interest—either a prospective economic or contractual relationship; (2) malice, i.e., intentional interference without justification;[15] (3) a reasonable likelihood that the interference caused the loss of the (prospective economic or contractual) gain; and (4) resulting damages.  See, e.g., Baxter Healthcare Corp. v. HQ Specialty Pharma Corp., ___ F. Supp. 3d _____, No. 13-6228, 2016 WL 344888, at *8 (D.N.J. Jan. 26, 2016) (citations omitted); N.J. Physicians United Reciprocal Exch. v. Boynton & Boynton, Inc., ___ F. Supp. 3d _____, No. 12-5610, 2015 WL 5822930, at *8 (D.N.J. Oct. 1, 2015) (citations omitted).[16]

---

[15] Malice in this context "does not require ill will," but instead means that the defendant intentionally inflicted harm "without justification or excuse." DiGiorgio Corp. v. Mendez & Co., 230 F. Supp. 2d 552, 564-65 (D.N.J. 2002) (citation omitted).  "New Jersey courts have long understood [this] inquiry to focus on whether [the] defendant's actions amounted to 'sharp dealing or overreaching or other conduct below the behavior of fair men similarly situated.'" Id. at 565 (citations omitted).  In other words, the analysis hinges upon an evaluation of whether the defendant's conduct bespeaks an improper motivation or intention. See generally id. In this instance, however, Plaintiff points to no such conduct, as explained below.

[16] "In that way, tortious interference with contract differs from tortious interference with a prospective economic benefit, only in terms of the contractual element." Baxter, ___ F. Supp. 3d

Plaintiff's intentional interference claims, in their current form, fail to allege the essential ingredient of an intentional interference without justification.  In his contractual interference claim (or, Count VI), for example, Plaintiff alleges that Defendants interfered with his contractual relationship with his healthcare insurer by "overriding" an insurance denial.  (Am. Compl. at ¶¶ 88, 90.) Plaintiff, however, fails to allege any actual interference, much less any harm borne from any interference (i.e., allegations from which to meet the malice requirement).  Rather, based upon Plaintiff's own allegations, it appears that the decision to "overrid[e]" the denial conferred a benefit, by allowing Plaintiff to receive insurance benefits for which he may not have qualified.  (Id.)

Plaintiff then tethers his prospective relationship claim (or, Count IX) to his loss of future employment opportunities, but does not allege any lost employment opportunities.  See Novartis Pharm Corp. v. Bausch & Lamb, Inc., 2008 WL 4911868, at *7 (D.N.J. Nov. 13, 2008) (explaining that the plaintiff "must allege" a "more concrete [injury] than lost business of unknown, unsolicited, or hypothetical customers").  Nor does he provide

_____, 2016 WL 344888, at *8 n.39 (citation omitted).  Given this substantive identity, coupled with the fact that these claims fail for substantially the same reason, the Court will address them together.

any allegations from which to divine the actual nature of Defendants' supposed interference, and raises instead only the <u>general</u> prospect of being caught in a "never fixable black list." (Am. Compl. at ¶ 98.)

Given these deficiencies, Plaintiff's tortious interference claims fail to state plausible claims for relief, and they will be dismissed without prejudice.

### E. Counts VII, X, & XII: Plaintiff's Claims for Intentional Infliction of Emotional Distress Must Be Dismissed

In Counts VII, X, and XII, Plaintiff generally alleges that Defendants subjected him to the intentional infliction of emotional distress by (1) interfering with the requirements of the CBA, (2) making "misrepresentation[s]" to third parties, and (3) requiring Plaintiff to pay "for a treatment [that] he could not afford." (Am. Compl. at ¶¶ 93, 96, 105.) Defendants, however, advance the view that Plaintiff's emotional distress claims must fail, because he does not allege any "'extreme and outrageous conduct,'" nor that he suffered any extreme emotional distress. (Defs.' Br. at 14.)

In order to state a claim for intentional infliction of emotional distress under New Jersey law, "'the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and [severe, resultant] distress.'" <u>Edmond v. Plainfield Bd. of Educ.</u>, ___ F. Supp. 3d ____, No. 11-2805, 2016

WL 1449191, at *14 (D.N.J. Mar. 18, 2016) (quoting <u>Buckley v.</u> <u>Trenton Saving Fund Soc.</u>, 544 A.2d 857, 863 (N.J. 1988)).  In other words, the plaintiff must allege "conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  <u>Id.</u> (quoting <u>Subbe-Hirt v. Baccigalupi</u>, 94 F.3d 111, 114 (3d Cir. 1996) (citing RESTATEMENT (SECOND) OF TORTS § 46 comment d)).

The emotional distress claims advanced here require no complex discussion, because Plaintiff fails to plead "intentional and outrageous" conduct by the Defendants, <u>and</u> fails to provide any details on the severity of his alleged distress.  Critically, Plaintiff tethers his emotional distress allegations principally, if not entirely, to Defendants' decision to require Plaintiff to submit to a breathalyzer test, and then their related decision to refer him to 28-day in-patient treatment.  (<u>See</u> <u>generally</u> Am. Compl.)  Nevertheless, these steps flowed from Defendants' statutory obligations, <u>see</u> 14 C.F.R. § 120.217(d) (requiring reasonable suspicion alcohol testing); 49 C.F.R. §§ 40.291, 40.305 (require that an SAP evaluate and recommend assistance and/or treatment, and that the employee successfully comply with the prescribed education and/or treatment), and Plaintiff acknowledges in his own Complaint that the alcohol testing occurred after he reported to

22

work un-showered, unshaven, wearing dirty clothes, and smelling faintly of alcohol.  (<u>See</u> Am. Compl. at ¶¶ 20-21.)  Against that backdrop, the Court cannot find these limited allegations adequate to demonstrate "extreme and outrageous conduct."[17]  <u>See</u> <u>Stampone v. Walker</u>, No. 15-6956, 2016 WL 885114, at *8 (D.N.J. Mar. 8, 2016) (dismissing an emotional distress claim for failure to plead "'intentional and outrageous'" conduct).

Aside from that deficiency, Plaintiff fails to allege that Defendants' conduct caused him sufficiently "severe" emotional distress.  <u>Moran v. DaVita, Inc.</u>, 441 F. App'x 942, 947 (3d Cir. 2011) (explaining that the emotional distress must be "so severe that no reasonable person could be expected to endure it").  Rather, he alleges, with little if any explanation, that he experienced "pain and suffering, emotional distress, mental distress, and diminished quality of life."  (Am. Compl. at ¶ 111.)  Plaintiff, however, provides no explanation concerning "how [his] life has been affected by [his] distress, how [his] daily routine had changed, [or] how intensity of [his] distress has impacted [his] life..."  <u>See</u> <u>Fogarty v. Household Fin. Corp.</u> <u>III</u>, No. 14-4525, 2015 WL 852071, at *19 (D.N.J. Feb. 25, 2015) (citing <u>Buckley v. Trenton Saving Fund Soc'y</u>, 544 A.2d 857, 864

---

[17] Nor can the Court conclude, based upon the presently bare allegations, that Plaintiff's other allegations (concerning the "overriding" of an insurance denial and/or "blacklist[ing]" from future employment) sufficient to qualify as "severe and outrageous."

(N.J. 1988)).  As a result, the Court finds Plaintiff's generic and conclusory allegations of emotional distress inadequate to meet the severity requirement for emotional distress claims.

For all of these reasons, Plaintiff's emotional distress claims will be dismissed without prejudice.

### F.   Count XI: Plaintiff's Claim for Associational and/or Race Discrimination Must Be Dismissed

In Count XI, Plaintiff alleges that Defendants violated the New Jersey Law Against Discrimination, N.J.S.A. §§ 10:5-1, -49, by discriminating against him on account of his disabled father, and his Latino race.  (Am. Compl. at ¶¶ 99-104.)  Nevertheless, the Court need not belabor this claim,[18] because Plaintiff's Complaint alleges, exclusively, that Defendants terminated his employment on account of his breathalyzer test (see, e.g., Am. Compl. at ¶ 29 (alleging that Defendants terminated him "solely for [the] result[s] of [the] breathalyzer test")), and not because of his association with a disabled person or his race.

---

[18] In brief, in order to state a plausible claim for race discrimination under the NJLAD, a plaintiff must allege that he "(1) belongs to a protected class; (2) was performing a job at a level that met the employer's legitimate expectations; (3) suffered an adverse employment action; and (4) [that] others not within the protected class did not suffer similar adverse employment actions."  Maclean v. Stuart Weitzman Shoes, 863 F. Supp. 2d 387, 391 (D.N.J. 2012) (citation omitted).  In order to state an associational discrimination claim, a plaintiff must similarly allege that (1) he was associated with a person with a qualifying disability; (2) he was qualified to perform the essential functions of his position; and (3) he suffered an adverse employment action because of his association.  See Valenti, 2015 WL 3965645, at *4-*5.

See <u>Valenti v. Maher Terminals LLC</u>, No. 14-7897, 2015 WL
3965645, at *4-*5 (D.N.J. June 30, 2015) (citation omitted)
(explaining that an associational discrimination claim under
then NJLAD requires an allegation that the "plaintiff suffered
an adverse employment action because of the [associated]
disability"); <u>Whitehead v. Cnty. Of Monmouth</u>, No. 15-5352, 2015
WL 5545552, at *2 (D.N.J. Sept. 18, 2015) (explaining the same
relative to a race discrimination claim under the NJLAD).

For that reason alone, Plaintiff's discrimination claim
must be dismissed without prejudice.

**V.   CONCLUSION**

For the reasons expressed above, Defendants' dismissal
motion will be granted.  The Second Amended Complaint will be
dismissed in its entirety against Defendant American Airlines
Inc., with prejudice.  Counts I, II, III, XIII, and XIV as to
Defendant Envoy Airlines, Inc., will be dismissed with
prejudice, while Counts IV, V, VI, VII, VIII, IX, X, XI, and XII
as to Defendant Envoy Airlines, Inc., will be dismissed without
prejudice and with leave to amend within thirty (30) days from
entry of the Order accompanying this Opinion.  In crafting a
Third Amended Complaint, however, the Court requires Plaintiff
to take note of the claim elements and deficiencies outlined in
this Opinion relative to Counts IV, V, VI, VII, VIII, IX, X, XI,
and XII, and then to re-assert **only** those claims for which he

can allege the necessary facts in support of each essential element.  Plaintiff may **not** again attempt to raise herein the claims that have been dismissed with prejudice.  An accompanying Order will be entered.

**July 20, 2016**
Date

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
Chief U.S. District Judge